298 U.S. 415 (1936)
BASSICK MANUFACTURING CO.
v.
R.M. HOLLINGSHEAD CO.[*]
No. 23.
Supreme Court of United States.
Argued October 21, 1936.
Decided May 18, 1936.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.
*416 Mr. Lynn A. Williams, with whom Messrs. Albin C. Ahlberg and Elwood Hansmann were on the brief, for petitioner in No. 23.
Mr. Frank S. Busser, with whom Mr. Leonard L. Kalish was on the brief, for respondent in No. 23.
Mr. Leonard L. Kalish for petitioners in No. 31.
Mr. Lynn A. Williams, with whom Mr. Albin C. Ahlberg was on the brief, for respondent in No. 31.
MR. JUSTICE ROBERTS delivered the opinion of the Court.
In these cases writs of certiorari were granted to resolve conflicts with respect to the scope and alleged infringement of claims 1 to 6, 8, 10, 14 and 15 of the Gullborg Patent No. 1,307,734. In No. 23 the Circuit Court of Appeals, while holding the claims valid, so construction them as to exculpate the accused devices from the charge of contributory infringement.[1] In No. 31 the Circuit Court of Appeals gave the claims a broader construction and adjudged that the petitioners were guilty of contributory infringement.[2]
The subject of the patent is a device for lubricating metal bearings, particularly those of automobiles. It has occasioned much litigation.[3] Before the date of Gullborg's *417 invention grease cups were used for bearing lubrication. The cup was connected with the bearing by a tube and oil or grease was forced through the tube into the bearing by screwing down a cap or plunger which was part of the cup. It became common to substitute, in place of the grease cup, a tubular fitting and to force grease through the fitting by means of a "gun" consisting of a compression chamber and an attached hose, the latter coupled to the fitting by a screw thread or bayonet coupling. In the case of the bayonet coupler the fitting had lugs or pins and the coupler device had slots which engaged such lugs or pins to form a tight union. The grease would then be forced from the chamber of the gun into the bearing by the use of a plunger or pump. In some of the prior art appliances the aperture of the fitting was kept closed when greasing was not being done by a ball or capsule held against the opening of the fitting by a spring. This closure is opened, during the greasing operation, by the pressure of the grease. Gullborg conceived the idea of a fitting in which, instead of pins or lugs set on either side, there should be a pin running directly through the tube and extending out on either side. He used that portion of the pin which bisected the tube as the base of a spring to hold in place a metal ball which closed the aperture of the fitting. This invention was novel in the respect that while others *418 had similarly closed the aperture of the fitting none had employed the pin both to form the lugs for engaging the slots of the coupler and to form the base of the spring supporting the ball closure. For this invention he applied for and obtained a patent, No. 1,307,733, which is not here in suit. Recognizing that when a bayonet coupler is secured to the pin fitting, and the grease is forced through the fitting into the bearing under great pressure, upon uncoupling the gun from the fitting some grease will remain around the end of the fitting and the orifice of the coupler which is not only useless but likely to soil the clothing of the operator or others using the machine, and litter the place where the greasing is done, Gullborg set about to devise a means for eliminating this residuum of grease. He conceived the idea of placing a movable perforated cup-shaped disk or washer in the barrel of the coupler held by a spring against the orifice of the coupler. The intended operation of his device was that when the coupler had been fastened over the pin fitting the spring should press the washer against the ball in the pin fitting so that the tube in the fitting would be open to receive the grease and, upon application of pressure to the grease, the washer would thereby be firmly pressed against the opening of the pin fitting, thus causing a tight union and preventing exudation of grease. His specification asserts that the invention makes possible the injection of grease under very high pressure. The design of the bayonet slots is such that, in uncoupling, the coupling member of the gun will at first be moved slightly forward on the pin fitting thus backing up the perforated washer in the bore of the coupler. As the two parts are then drawn apart by the retraction of the coupler, the cup-shaped washer will be forced forward by the spring. This will cause a vacuum behind the washer and the air rushing in through the *419 perforation in the washer will draw with it any grease which would otherwise adhere about the orifices of the fitting and the coupling.
While Gullborg's invention was confined to an improvement in the hose coupler, which is but one element in the old and well understood combination of a compression chamber or pump, as house, a hose-coupler, and a grease cup or fitting connected to the bearing to be lubricated, his claims are not for the improvement as such but all are for a combination of the old elements with the improved form of coupler. They are too long to set forth in full. Claim 2 may be taken as typical of a number of them. It reads:
"2. The combination with a hollow coupling member having a pin projecting from one side thereof and a spring-pressed closure, of a pump, a discharge conduit having one end secured to the outlet of said pump, a second hollow coupling member for receiving the closed end of said first named coupling member secured to the other end of said conclude and provided with a bayonet slot adapted to co-act with said pin, a perforate sealing disk mounted to reciprocate in the bore of said coupling member, means for yieldingly urging said sealing disk against the closed end of said first named coupling member, and means for limiting the movement of said sealing disk in the direction of said second coupling member."
The claimed combination is, therefore, of four things: (1) a type of pin fitting which was old in the art; (2) a pump for creating pressure, which was old; (3) a hose to connect the two; and (4) a well-known type of coupler, the only novel feature of which is the perforated sealing disk mounted to reciprocate in the bore of the coupler with means for yieldingly pressing the disk against the end of the pin fitting and means for limiting the movement of the disk in the direction of the pin fitting (which *420 signifies merely some sort of shoulder at the orifice of the coupler to prevent the spring from forcing the disk out of the end of the bore).
Nothing is said in specification or claims concerning the release of the high pressure in the gun before uncoupling, but evidently this must be done if the movement of the perforated disk is to create a vacuum. The petitioner concedes that if the high pressure is maintained the grease packed behind the washer will move forward with it and not only prevent the creation of a vacuum back of the washer but continue to exude from the coupler through the perforation in the washer. It is explained that the pressure may be released by a slight retraction of the plunger in the grease gun so as to permit the spring and washer to perform their function of creating a suction when the pin and coupler are disengaged.
Claims 1 to 6, inclusive, and 8 and 10, have been repeatedly held valid, but the invention has generally been limited to the novel means whereby upon the uncoupling of the gun from the pin fitting a suction is produced which removes excess lubricant from the point of contact of the two members. Although in the instant cases the validity of the claims is denied, we think they disclose novelty and invention to the extent indicated.
Claims 14 and 15 are of a different order. Claim 15 may be taken as typical. It is:
"15. The combination with a grease cup comprising a tubular member having a closure seat, a closure, a pin extending through said tubular member and from both sides thereof, and a spring confined between said pin and closure, and tending to hold said closure on its seat, of a grease pump having a discharge conduit, and means co-acting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease cup."
It will be noted that this claim describes a combination consisting of the pin fitting of Gullborg's patent *421 No. 1,307,733, with any grease pump having a bayonet type coupler. Nothing in the claim discloses the cup shaped reciprocating disk yieldingly pressed forward against the closure of the pin fitting. Grease guns having such a bayonet coupling were old in the art. The question is whether claims 14 and 15, unless restricted to the combination of a grease gun and coupler and a pin fitting such as are described in the specifications of the patent, are void as attempting to extend the monopoly of Gullborg's patent No. 1,307,733, to exclude the use therewith of any grease gun except one having the suction device of the patent in suit.
With this background we pass to consideration of the specific cases presented.

No. 23.
The petitioner, as owner of the Gullborg patent, filed a bill in the district court to restrain alleged infringement by the respondent. The latter did not sell pin fittings but did sell two types of grease pumps. The slotted coupler of the first has no slidably mounted cup-shaped perforated disk in its bore. Confessedly there is no means for producing the suction effect claimed for Gullborg's invention. The Circuit Court of Appeals, reversing the decision of the district court, held that in view of the limited scope of the invention disclosed in claims 1 to 6, inclusive, and 8 and 10, this device did not infringe. It further decided that as claims 14 and 15 must be limited to a combination embracing couplers embodying the suction effect,  the only novel feature of the patent,  or else be held void as attempting to gain protection for something not covered by the invention, this grease pump did not infringe those claims. The petitioner does not contest the holdings. The second gun sold by the respondent combines a receptacle containing grease under a pneumatic pressure of about one hundred pounds the *422 exit of which is connected to a pipe discharging into the chamber of a plunger-operated pump and a hose attached at the base of the pump chamber terminating in a coupling device like that of the Gullborg patent. The method of operation is that when the plunger is retracted beyond the orifice of the supply pipe grease is forced into the pump chamber by the air pressure in the receptacle. By the downward stroke of the plunger the entrance to the pump-chamber is closed and the grease therein forced into the hose and through the coupling and pin fitting to the bearing. By successive strokes a very high pressure can be built up in the hose. The Circuit Court of Appeals found, and we think correctly, that with this arrangement it was impossible to release the pressure in the grease line between the pump and the bearing before uncoupling the hose from the pin fitting, so as to permit the spring to force the disk forward in the bore of the coupler and create a suction as in Gullborg's patent; and that the accused device was subject to the very exudation of grease at the point of union which Gullborg's invention was intended to obviate. It therefore held that the accused grease gun lacked the only novel feature of the patented combination.
The decision went upon a question of fact. The petitioner offered no evidence to prove that the accused device operated to produce the suction effect claimed in the patent but relied upon the physical exhibits consisting of its own and the respondent's apparatus and upon ocular demonstrations of their operation. The respondent introduced evidence to show the absence of the suction effect in its device and combated the inference sought to be drawn from the physical operation of the two exhibits. We are satisfied that the Circuit Court of Appeals was correct in its decision that the accused device did not embody the novel feature claimed in the patent.
*423 As respects claims 14 and 15, which are for a combination of the pin fitting covered by Gullborg's patent No. 1,307,733 with a grease gun and coupler of any type, the Court of Appeals held that these must be read as claiming a combination of the patented pin fitting and a gun with the coupling device described in the specifications and having the suction effect set forth in the other claims or must be held void as unlawful attempts to extend the monopoly of the pin fitting which is described in patent 1,307,733. The court sustained these claims by restricting their scope to conform to the other claims based on the suction effect and held they were not infringed by the respondents apparatus. We do not understand the petitioner to seek a reversal of this holding. Its petition for certiorari and the assignments of error are bare of any attack upon this portion of the Circuit Court of Appeals' decision. These claims, however, are drawn in question in No. 31 and may more properly be discussed in that connection.

No. 31.
In this case the respondent, as owner of the Gullborg patent No. 1,307,734, sued the petitioners, who neither made nor sold pin fittings of the type covered by Gullborg's patent No. 1,307,733, nor grease pumps or guns having the coupler construction of those described and claimed in the patent in suit. But the petitioners did sell pin fittings of a type with which a grease gun of the description of Gullborg's could be used, and grease guns having a bayonet slotted coupler, which could be used either with the pin fittings of Gullborg's patent No. 1,307,733 or with others not covered thereby. These sales were charged to be contributory infringements of patent No. 1,307,734. The district court so held and the Circuit Court of Appeals affirmed.
What has been said with respect to claims 14 and 15 need not be repeated. The petitioners' grease guns are *424 of an old unpatented type having couplers of a different construction from that disclosed in the patent. There is no assertion that they produce the suction effect of Gullborg's invention. The petitioners' pin fittings are not of the type described in Gullborg's patent No. 1,307,733.
The proofs establish that the prior art embraced the use in combination of a grease gun composed of a chamber or pump, a hose, a hose-coupler, and a spring-closed fitting, the coupling being of the pin and slot or bayonet type. The respondent's position is, nevertheless, that if the petitioners furnish a gun, a part of this old unpatented and unpatentable combination, for use with the patented pin fitting of Gullborg's No. 1,307,733, they contributory infringe claims 14 and 15 of the patent in suit because those claims described the combination of any grease gun with the patented pin fittings. Again, the respondent says that as pin fittings made in accordance with the prior art, but susceptible of use with a gun covered by the patent in suit, were sold by petitioners, these sales constituted contributory infringements of all the claims of the patent.
It is plain that Gullborg invented improvements of two of the mechanical elements of an old combination consisting of grease pump, hose, hose-coupler, and a grease cup or pin fitting. First, he contrived an improved pin fitting. This he patented as such (No. 1,307,733.) Secondly, he invented an improved from of coupler to be attached to the end of the hose leading from the pump to the fitting. Instead of patenting this, as he did the pin fitting, he claimed a combination of pump, hose-coupler, and pin fitting, and embodied in the combination his improved form of coupler. (No. 1,307,734, the patent in suit; claims 1-6, 8 and 10). He further claimed the combination between his patented pin fitting and any form of grease gun whether that *425 claimed in his patent or unpatented and old in the art. (Claims 14 and 15.) The question then is whether, by this method, the patentee, by improving one element of an old combination whose construction and operation is otherwise unchanged, may, in effect, repentent the old combination by reclaiming it with the improved element substituted for the old element. That this cannot be done is shown by numerous cases in this and other federal courts.[4]
Leeds & Catlin v. Victor Talking Machine Co., 213 U.S. 301, 325, on which the respondent relies, is not in point. There the patent was a pioneer patent and the combination was of elements which were novel and neither of which possessed utility without the other. Each element was necessary to the operation of the other. The invention did not, as here, consist of the mere improvement of one element of an old combination.
We are of the opinion that the owner of the patents cannot extend the monopoly of its patent for a pin fitting to preclude the use therewith of any grease gun not embodying the improvement in the coupling device evidenced by the patent in suit; and cannot extend the monopoly of the combination patent in suit to prevent the use of a pin fitting which does not infringe the fitting patent, 1,307,733, with a gun having a coupler such as that claimed in the patent in suit.
*426 In No. 23 the decree is affirmed. In No. 31 the decree is reversed and the cause remanded for further proceedings in conformity with this opinion.
So ordered.
The CHIEF JUSTICE took no part in the consideration or decision of these cases.
NOTES
[*] Together with No. 31, Rogers et al. v. Alemite Corporation. Certiorari to the Circuit Court of Appeals for the Third Circuit.
[1] Hollingshead Co. v. Bassick Mfg. Co., 73 F. (2d) 543.
[2] Rogers v. Alemite Corporation, 74 F. (2d) 1019.
[3] Many district court decisions are unreported. Reported decisions in district and circuit courts of appeal are: Bassick Mfg. Co. v. Auto Equipment Co., 13 F. (2d) 463; Lyman Mfg. Co. v. Bassick Mfg. Co., 18 F. (2d) 29; Bassick Mfg. Co. v. Standard Products Mfg. Co., 19 F. (2d) 937; Bassick Mfg. Co. v. Larkin Automotive Parts Co., 19 F. (2d) 939; Larkin Automotive Parts Co. v. Bassick Mfg. Co., 19 F. (2d) 944; Bassick Mfg. Co. v. Ready Auto Supply Co., 22 F. (2d) 331; Bassick Mfg. Co. v. Rogers, 26 F. (2d) 724; Alemite Mfg. Corp. v. Hi-Pressure Sales Co., 33 F. (2d) 912; Bassick Mfg. Co. v. Adams Grease Gun Corp., 39 F. (2d) 904, 52 F. (2d) 36; Bassick Mfg. Co. v. United Grease Gun Corp., 40 F. (2d) 549; Alemite Corporation v. Lubrair Corporation, 62 F. (2d) 899.
[4] Edison Electric Light Co. v. Peninsular Light P. & H. Co., 101 Fed. 831; Heald v. Rice, 104 U.S. 737, 755; Underwood v. Gerber, 149 U.S. 224, 227, 229; Morgan Envelope Co., v. Albany Paper Co., 152 U.S. 425, 431, 432; Carbice Corporation, v. American Patents Development Corp., 283 U.S. 27, 31, 32; Wagner Typewriter Co. v. Webster Co., 144 Fed. 405, 409; Langan v. Warren Axe & Tool Co., 184 Fed. 720; Harvey Hubbell, Inc. v. General Electric Co., 267 Fed. 564; Troy Wagon Works Co. v. Ohio Trailer Co., 274 Fed. 612; General Electric Co. v. Ohio Brass Co., 277 Fed. 917; Radio Corporation v. Lord, 28 F. (2d) 257; Wall Pump & C. Co. v. Gardner Governor Co., 28 F. (2d) 334.